UNITED STATES DISTRICT COURT         FOR ONLINE PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------- X
SARA GOUTTER,

                Plaintiff,         MEMORANDUM
                                                     AND ORDER

      - against -
                                                      08-CV-830 (JG) (RLM)

MERYLE J. HURLEY and JESSICA A. HURLEY,
                      Defendants.
----------------------------------------------------------------- X

A P P E A R A N C E S:

    LEVINE & SLAVIT
        60 East 42nd Street, Suite 1614
        New York, New York 10165
    By:    Leonard S. Slavit
        *Attorneys for Plaintiff*

    BURATTI, KAPLAN, McCARTHY
    & McCARTHY
        75-20 Astoria Boulevard, Suite 310
        East Elmhurst, New York 11370
    By:    E. Richard Viera
        *Attorneys for Defendants*

JOHN GLEESON, United States District Judge:

        On November 30, 2007, Sara Goutter filed a complaint in the New York State Supreme Court, Kings County, against defendants Meryle and Jessica Hurley (collectively, "the Hurleys") alleging that she was seriously injured by their negligence. The Hurleys filed a notice of removal on February 27, 2008. They now move for summary judgment pursuant to Federal Rule of Civil Procedure 56 contending that Goutter did not suffer a "serious injury" within the meaning of N.Y. Insurance Law § 5102(d) and that Goutter's left-knee anterior cruciate ligament

("ACL") was not torn in the accident. For the reasons set forth below, the Hurleys' motion is denied.

DISCUSSION

The following facts are either uncontested or set forth in the light most favorable to the plaintiff. Early in the morning of November 23, 2006, Goutter was struck by a motor vehicle operated by Jessica Hurley and owned by Meryle Hurley while crossing Hudson Street in New York City. Goutter claims that the collision caused the following injuries: an avulsion tear of the ACL and ACL insufficiency in her left knee; tibial edema consistent with bone bruising of the left knee; Grade 1 chondromalacia of the patellafemoral joint; head trauma with concussion and edema; cervical sprain; multiple contusions and abrasions. Pl. Rule 56.1 Stmt. ¶ 2.

At a June 30, 2008 deposition, Goutter testified that she was unconscious after the accident and an ambulance took her to the emergency room at St. Vincent's Medical Center in Manhattan. X-rays and a CAT scan were performed, and Goutter was released after around five hours. Ex. E. 64-65. The following day, she visited her internist, Dr. Michael Stark, and complained of pain in her head, right side, and left leg. Dr. Stark recommended physical therapy. At the time of the accident, Goutter was enrolled at SUNY Albany (she was in New York City for the Thanksgiving break), and she worked part-time at a restaurant. She returned to school "mid-week" following the accident, *id.* at 19, and didn't go back to work "for about a week" after returning to Albany "because it was hard for me to stand for such long hours." *Id.*

Goutter attended physical therapy sessions for her knee approximately three times in December 2006 and was given a list of exercises which she also performed at home. *Id.* at 68-70. She saw Dr. Stark or his partner, Dr. Eigess, "three or four times" following the accident, *id.* at 71, but did not see either doctor after 2007. A magnetic resonance imaging scan ("MRI") of

Goutter's left knee was taken on January 10, 2007 (the "January MRI"). Radiologist Dr. Lawrence N. Tanenbaum, whose affidavit was submitted with Goutter's opposition papers, examined the MRI and found "no evidence of meniscal or ligament tear." Tanenbaum Aff. 3.[1]

Goutter visited the office of orthopedist Dr. Joel Bonamo five times after the accident.[2] At her first visit, on May 25, 2007, Goutter complained of pain in her left knee and said she could not squat or sit cross-legged. A physical examination revealed "no swelling or effusion" and that Goutter was "ligamentously intact." Bonamo Aff. 3. Bonamo's report also stated that the January 10 MRI "was negative except for edema around the fibula head." *Id.* Dr. Bonamo recommended "conservative treatment" involving anti-inflammatory medication, resumption of activities "to tolerance," quadriceps exercises and a return visit in four to six weeks. *Id.*

Dr. Bonamo saw Goutter for her knee pain again on October 10, 2007.[3] He found "no evidence of ligamentous insufficiency" but ordered another MRI. An MRI was taken and examined by Dr. Tanenbaum on October 15, 2007 (the "October MRI"). Dr. Tanenbaum reported "an avulsion tear of the anterior cruciate ligament." Tanenbaum Aff. 4. In his report, Tanenbaum stated that the "tear was less evident on the prior examination as the anterior cruciate ligament contour was normal, however in retrospect, the femoral attachment of the anterior cruciate ligament was poorly defined and likely torn." *Id.* at 4. He repeated this assessment in his sworn affidavit. *Id.* at 2.

---

[1] For ease of reference, I cite the January 10, 2007 and October 15, 2007 reports attached to Dr. Tanenbaum's affidavit as pages three and four of that affidavit, respectively.

[2] An affidavit from Dr. Bonamo was submitted with plaintiff's opposition papers. For ease of reference, I cite the May 25, 2007, October 10, 2007, April 2, 2008, May 6, 2008, and January 12, 2009 reports attached to that affidavit as, respectively, pages three through seven of that affidavit.

[3] Dr. Bonamo's October 10, 2007 report states that Goutter "was seen here in May 2007 and an MRI had been done at that time." Bonamo Aff. 4. I assume this is a reference to the January MRI, as there is no indication that any MRI was performed in May 2007.

Goutter returned to Dr. Bonamo on April 21, 2008. "She reported occasional buckling" of her left knee and "stated she tried kickboxing and was unable to jump." Bonamo Aff. 5. Bonamo's impression was that Goutter "had left [ACL] insufficiency and also some element of patellofemoral pain." *Id.* He referred Goutter to orthopedic surgeon Dr. Mark Sherman, who, on May 6, 2008, noted that Goutter "complains of some pain with stairs" but did not "complain[] of instability," and recommended against ACL reconstructive surgery to repair the tear. *Id.* at 6. Goutter next visited Bonamo on January 12, 2009. Bonamo diagnosed left ACL insufficiency and again recommended conservative treatment, but opined that Goutter would be a candidate for reconstructive surgery if her symptoms did not subside. *Id.* at 7.

In an affidavit submitted with Goutter's opposition papers, Dr. Bonamo stated that Goutter continues to experience "patellafemoral pain and [ACL] insufficiency with limitations in engaging in certain activities" and suffers from an "avulsion tear" of the ACL. *Id.* at 2. He opined that "[i]f the history given by plaintiff is correct, these injuries, within a reasonable degree of medical certainty," were caused by the November 2006 accident. *Id.* He also stated that Goutter "has a permanent partial disability and permanent consequential limitation of use of her left knee that limits her activities as a result of the accident. These are significant injuries impairing her use of her left knee. Reconstructive surgery of the ACL would be recommended in the event of instability and further buckling." *Id.* at 2.

On October 6, 2008, Goutter was examined, apparently at the Hurleys' request, by Dr. Gregory Montalbano, an orthopedic surgeon. The only abnormality found by Montalbano was in Goutter's left knee. He noted that Goutter continued to complain of "pain in the left knee," and that treatment "currently consists of gym/home exercises for strength training."

4

Montalbano Aff. 1.[4]  While he observed that Goutter had a full range of motion in the knee, he also noted "tenderness" and "abnormal" stability "with a positive Lachman,"[5] *id.* at 3, and concluded that his examination was "consistent with insufficiency of the [ACL]," *id.* at 4, and that the October 2007 MRI demonstrated an "[ACL] tear." *Id.* at 5.  The report also describes an ACL tear as an "acute" injury and a "substantial" injury.  *Id.* at 4.

Dr. Montalbano also concluded, based on a review of Goutter's medical records, that the ACL tear and ACL insufficiency were "unrelated to the accident." *Id.* at 5.  In his view, the tear was not present in the January MRI and was clearly present in the October MRI, indicating that the ACL was torn after the accident and the January MRI.  He also opined that Goutter's symptoms and treatment at St. Vincent's immediately following the accident were inconsistent with a torn ACL.  He noted, however, that Goutter saw a Dr. Cozzarelli on February 20, 2007, who found indications of left knee instability, diagnosed an ACL tear, and recommended "ACL reconstruction following physical therapy." *Id.* at 4.

The Hurleys also submitted an affidavit and two reports from radiologist Dr. Stanley Sprecher.  Dr. Sprecher concluded that the October MRI indicated an ACL tear, but that no tear was present on the January MRI.  He also concluded that the bone bruising shown on the January MRI was no longer present in the October MRI, and that the October MRI also showed a new bone bruise.  He concluded from this review that the ACL tear and bruising developed after the January MRI was taken and thus did not result from the November 2006 accident.

DISCUSSION

A.   *The Summary Judgment Standard*

---

[4]   The "Independent Medical Examination" accompanying Dr. Montalbano's affidavit is cited as pages 1-5 of that affidavit.
[5]   A Lachman test is a medical procedure used to determine whether the patient's ACL is damaged.

Under Rule 56 of the Federal Rules of Civil Procedure, the moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party must demonstrate that no genuine issue exists as to any material fact. *Gallo v. Prudential Residential Servs. Ltd. P'ship*, 22 F.3d 1219, 1223 (2d Cir. 1994). For summary judgment purposes, a fact is "material" when its resolution "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Accordingly, in determining whether an issue is genuine, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation marks and citation omitted).

Once the moving party has met its burden, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 587 (quoting Fed. R. Civ. P. 56(e) (emphasis omitted)). The moving party may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case. When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper. *Gallo* at 1223-24. The nonmoving party cannot survive summary judgment by casting mere "metaphysical doubt" upon the evidence produced by the moving party. *Matsushita*, 475 U.S. at 586.

B.     *The "Serious Injury" Requirement*

Under New York law, a claimant cannot bring suit for a personal injury arising out of an automobile accident "except in the case of a serious injury." N.Y. Ins. Law § 5104(a). According to the statute,

> "Serious injury" means a personal injury which results in: [1] death; [2] dismemberment; [3] significant disfigurement; [4] a fracture; [5] loss of a fetus; [6] permanent loss of use of a body organ, member, function or system; [7] permanent consequential limitation of use of a body organ or member; [8] significant limitation of use of a body function or system; or [9] a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than [90] days during the [180] days immediately following the occurrence of the injury or impairment.

N.Y. Ins. Law § 5102(d). Goutter conceded at oral argument that her injury satisfies only categories (7) and (8).

This threshold requirement of "serious injury" was intended "to weed out frivolous claims and limit recovery to significant injuries." *Dufel v. Green*, 84 N.Y.2d 795, 798 (1995). The New York Court of Appeals has accordingly "required objective proof of a plaintiff's injury in order to satisfy the statutory serious injury threshold; subjective complaints alone are not sufficient." *Toure v. O'Neal*, 98 N.Y.2d 345, 350 (2002) (citations omitted); *see also Licari v. Elliot*, 57 N.Y.2d 230, 236 (1982) (the purpose of the no-fault law is to reduce the number of automobile personal injury accident cases litigated in the courts, and thereby help contain the no-fault insurance premium.).

In the summary judgment setting, New York law places on the defendant the initial burden of establishing a prima facie case that a plaintiff has not sustained any "serious injury." *See Gaddy v. Eyler*, 79 N.Y.2d 955, 956-57 (1992). In support of an argument that there is no such serious injury, a defendant may rely on the unsworn reports by the plaintiff's

physicians, but evidence from its own physicians must be provided in the form of sworn affidavits or affirmations. *See Waldman v. Atlantic-Heydt*, No. 04-CV-2154 (SJ), 2006 WL 2010783, at * 3 (E.D.N.Y. July 14, 2006).

If the defendant satisfies this burden, the burden of production shifts to the plaintiff, who must come forward with sufficient evidence to permit a jury to conclude that the plaintiff sustained a serious injury within the meaning of the law. *Gaddy*, 79 N.Y.2d at 957. As mentioned, subjective complaints alone are insufficient to meet that burden. Like the defendant, the plaintiff is obligated to oppose the motion with "competent medical evidence based upon objective medical findings and diagnostic tests [that] support her claims." *Fountain v. Sullivan*, 690 N.Y.S.2d 341, 342 (3d Dep't 1999).

The Hurleys have failed to make their initial showing. The parties do not dispute that Goutter presently suffers from a torn ACL and ACL insufficiency. However, there is very little evidence in the defendants' submissions that speaks to the severity, rather than the source, of this injury. Goutter's deposition testimony and medical records establish that she suffers from pain in her left knee that makes it difficult to climb stairs and prevents her from engaging in activities such as running, playing tennis, and kickboxing. The finding of an ACL tear and insufficiency in the medical reports corroborates the existence of this limitation.

Nothing in the defendants' evidence establishes, as a matter of law, that this limitation is minor rather than "significant" or "consequential." N.Y. Ins. Law § 5102(d). It is obvious from her testimony that Goutter regards it as consequential. While Dr. Sprecher does not opine as to the severity, Dr. Montalbano describes an ACL tear as "acute" (a synonym of severe) and "consequential." Montalbano Aff. 4. While the cases cited by Goutter involve more serious and varied injuries, *see Rosario v. Universal Truck & Trailer Serv., Inc.*, 779 N.Y.S.2d 1,

4 (2004) (ligamentous knee injury of unspecified magnitude accompanied by limitations of range of motion of the lumbar and cervical spine); *Bentham v. Rojas*, 851 N.Y.S.2d 514, 514 (1st Dep't 2008) (knee injury involved "significant and specified" limitations of the range of motion and was accompanied by similarly serious damage to the lumbar and cervical spine), the Hurleys cite not cases suggesting that an ACL tear, standing alone, is insufficiently serious as a matter of law. Accordingly, I conclude that the Hurleys have not made a *prima facie* showing that Goutter has no "consequential limitation of use of a body organ or member" or no "significant limitation of use of a body function or system." N.Y. Ins. Law § 5102(d).

Similarly, Goutter's testimony suggests that she has suffered from this injury from November 2006 until the present. While the physicians relied on by the defendants opine that the injury was sustained later, *i.e.*, between January 10 and October 2007, they do not contest that it persists to this day, and may not be fully repaired even with reconstructive surgery. Accordingly, the Hurleys have not made a *prima facie* showing that they are entitled to summary judgment on the issue of permanence.

Defendants also attribute significance to alleged "gaps" in Goutter's treatment of the injury. Reply Aff. ¶ 11. While it is not clear that this argument is properly before the court, as it is raised for the first time in defendants' reply affirmation, it is unpersuasive in any event.

First, the alleged eight-month gap in "treatment" is significantly shorter than the gaps found dispositive in *Pommells v. Perez*, 4 N.Y.3d 566, 574 (2005) (three years) and *Kearse v. New York City Transit Authority*, 789 N.Y.S.2d 281 (2d Dep't 2005) (approximately 15 months). Second, with regard to this type of injury, the evidence suggests that a gap between visits to a doctor or physical therapist is not necessarily a gap in treatment. A patient apparently treats this injury either by performing a series of strength exercises or by undergoing surgery.

9

Thus far, Goutter has elected, upon the advice of Dr. Bonamo, to utilize the former course of treatment. She alleges that she can and does treat her injury by performing strength exercises at home, and Dr. Montalbano's report acknowledges that Goutter was treating her injury in this fashion. Montalbano Aff. 1. Accordingly, the Hurleys have failed to demonstrate gaps in treatment that would entitle them to judgment as a matter of law.

C. *Causation*

The mere existence of an injury does not make the Hurleys liable to Goutter; Goutter must also demonstrate that her injury was caused by the Hurleys' alleged negligence. *See Lopez v. Simpson*, 835 N.Y.S.2d 98, 98 (2007) (summary judgment appropriate when there was no "issue of fact as to whether the limitations were caused by the accident"). On the issue of causation, Drs. Montalbano and Sprecher opine that the MRIs of Goutter's knee demonstrate that her ACL was torn by October 2007 but was not torn in January 2007. If they are correct, the only reasonable inference is that the ACL tear occurred after January 2007, and was thus not caused by the November 2006 accident. Accordingly, defendants have made a *prima facie* showing that they are entitled to summary judgment on the dispositive issue of causation.

In response, Goutter submits the opinion of Dr. Tanenbaum, who concludes that the ACL was likely torn before the January 2007 MRI, but the January MRI does not reflect this condition because "the femoral attachment of the anterior cruciate ligament was poorly defined" in that scan. Tanenbaum Aff. 2. If I credit Dr. Tanenbaum's affidavit, the probative value of the January MRI is considerably diminished, and a reasonable jury could find that the car accident caused the ACL tear. Normally, of course, I must credit the evidence of the non-movant on a motion for summary judgment.

The Hurleys, citing *Byam v. Waltuch*, 857 N.Y.S.2d 605 (2d Dep't 2008), and *Faulkner v. Steinman*, 813 N.Y.S.2d 529 (2d Dep't 2006), argue that I can discount Dr. Tanenbaum's affidavit because it is "speculative and conclusory." Reply Aff. ¶ 13. In these cases, the Appellate Division, in affirming awards of summary judgment, disregarded affidavits submitted by plaintiffs' physicians because those affidavits failed to address evidence of alternative causes. In this case, however, the most compelling evidence of an alternative cause is the January MRI. Dr. Tanenbaum's affidavit squarely addresses this evidence, opining that the MRI is not probative of the existence of an ACL tear because the relevant portion of the knee is "poorly defined" in that scan. Tanenbaum Aff. 2. Accordingly, *Byam* and *Faulkner* give me no basis for disregarding Tanenbaum's affidavit.

Apart from the January MRI, the only evidence of alternative causation is Goutter's testimony that she engaged in strenuous activity, such as kickboxing, that might also have caused an ACL tear. I must also credit Goutter's testimony that she had no symptoms of a torn ACL prior to the accident, that she attempted to kickbox only once after the accident, and that she desisted when she found that she could not jump. In addition, Dr. Montalbano's report indicates that Goutter was diagnosed with an ACL tear by a Dr. Cozzarelli on February 20, 2007, although Dr. Cozzarelli did not review the January MRI.[6] This evidence, viewed in the light most favorable to the non-movant, precludes a finding that, as a matter of law, the car accident was not the cause of the ACL tear and insufficiency. Accordingly, I cannot award summary judgment on this ground.

## CONCLUSION

---

[6] Goutter's attorney submitted a copy of Dr. Cozzarelli's report at oral argument. The Hurleys' counsel did not challenge the propriety of considering the report, but did argue that it was not particularly probative.

11

For the foregoing reasons, the Hurleys' motion for summary judgment is denied. Trial of this case is scheduled to begin on May 11, 2009. A final pretrial conference is scheduled for May 1, 2009 at 10:00 A.M. in Courtroom 6C South.

So ordered.


John Gleeson, U.S.D.J.

Dated: March 11, 2009
      Brooklyn, New York